The next case for argument is 171689, AbbVie v. Medimmune. The District Court's determination that there was no jurisdiction. This patent expires in June, right? Correct, Your Honor. How could you possibly get a decision, a final decision on the patent validity between now and the expiration in June? And if this case is going to become moot in June, why should we spend a lot of time addressing these difficult issues when it's going to become moot anyway? Two points, Your Honor. First of all, the actual payment is not due until the end of September 1990, I mean September 2018. And we pointed that out in the various motions that were filed regarding the scheduling of the case and motions to expedite. So there is more time than January. And I think there is some... But even so, I mean, you know, you've got a District Court proceeding. You've got probably an appeal from that. You know, you're talking about a proceeding which wouldn't become final for at least a year or two. Well, I think the District Court determination would be final for purposes of the contract. It may be subject to appeal, but it's a final decision. And I think there's a discreet legal issue of obvious double-tied patenting here that can be resolved by the District Court. We believe on summary judgment with no fact discovery, perhaps some expert reports. And it can be decided. The other point I'd make, Your Honor, is that if there's a proceeding underway where the court is determining the issue of validity, it may be possible if Medamine brings an action in the English courts to tell the courts there to wait, if it's a reasonable amount of time, because the issue of validity is actually being determined by the U.S. court. So I don't think that the record here is such that this action would be moot so that the court should not decide this. But they would bring an action because you didn't pay. I mean, why would they – that would be the basis for an action. Either that or a declaratory relief action that we are not going to pay, yes. But my point is that, A, we believe we can get a determination by the end of September. B, that the District Court decision would be a final judgment. And C, that if – So would you not pay if you got a favorable District Court decision? I would say that that is – that our analysis would be that we would not have to pay and that we would not, yes. Wouldn't that get appealed up to the Federal Circuit, though? Any adverse District Court judgment? It may. Rendering the patent invalid? It may, Your Honor, but I don't think that affects the finality of a District Court judgment as a final judgment that would invalidate the patent for purposes of the contract. Now, obviously, if the Federal Circuit reverses on the merits, on the merits, then we'd have to reverse course. Well, if you didn't pay and then we reversed based on some hypothetical District Court opinion and you refused to pay and then it gets reversed on appeal, then I think you end up having – I mean, there's relief for the other side, which is you end up having to pay. I don't know if there's interest or penalties. Yeah, I can't quarrel with that, Your Honor. If that all happens, then we would have to – we would live up to our obligations under the contract. We're not talking about not paying if there is no judgment of invalidity. But I think a District Court determination of invalidity would allow us not to pay, would excuse us. And if that gets reversed, and I hope it would not, but if that got reversed, then we would have to reexamine our options and I would admit we'd probably have to pay at that point. Is there some reason why you didn't file this D.J. action sooner? Yes, Your Honor. I think that this is a double-patenting case involving an earlier-filed patent, a later-filed patent being used to potentially invalidate an earlier-filed patent. It involves a pre-cat patent and a post-cat patent. And I think there was – the decisions of this Court were not particularly clear as to whether or not we were able to assert obvious double-tied patenting in that circumstance. Beginning with the Gilead v. Natco case, I think in 2014, and then later subsequent decisions of some District Courts, it became clear that we would have a case to argue that the 516 patent is invalid. And then we acted reasonably promptly as that law developed to go ahead and file the case. And we did file it quite a while ago. Unfortunately, the District Court took a while to make this ruling and we find ourselves here. But as I said to Judge Dyke, this case is not moot. You seem to gloss over in your comments, and that's fine, that a validity determination would resolve all of this. And that's the rub, right? I mean, you didn't allege, you didn't seek a declaratory judgment with respect to contractual rights. And that's what led the District Court to say, we're not going to do this piecemeal. Even a judgment with respect to validity is not going to resolve the contractual issue. And that's a problem for you, isn't it? I don't think so, Your Honor, and let me explain why. First of all, the Supreme Court and then this Court in Powertec made clear that if you are alleging invalidity and then the licensor argues that the contract does not, would require you to make payments regardless of validity, that that's a merits issue. And that the Court can decide that issue as part of the merits and does not go to jurisdiction. It may not go to jurisdiction, but it goes to whether a declaratory judgment is appropriate. In this contract, unfortunately we don't have the contract in full in the appendix. Is there a form selection clause in the contract? There's a form selection, there's a form, there's no form selection clause. But so, and as I understand what you say in your reply brief, you agree that you could have asked for a declaratory judgment of contract interpretation in the district court here along with the validity argument, right? Your Honor, I think the Powertec case is... Wait, wait, wait, answer my question. Do you agree that you could have done that? I would say that it was no necessity to under this Court's precedent. No, no, that was not my question. My question is do you agree that you could have done that? Sure, we could have done that. Yeah, and you didn't, and you didn't do it, right? But the reason we didn't... Wait, wait, you did not do it, right? There's no separate prayer. Didn't do it. No separate prayer. Did you do it? No. No separate prayer, that's correct. But we did say in the complaint that we did provide our interpretation of the contract, which was then disputed. And in the Powertec case, which I think is right on point here, the declaratory relief that was sought was only for invalidity and non-infringement. There was no separate prayer for declaration of rights under the contract. Nevertheless, the Court held that the district court, that the contract was a question of merits, the contract issue, and the district court had the full authority to decide that contract question on the merits, as part of the merits, and it would not go to jurisdiction. So I would ask the Court to look at that case. I think it's right on point. There was no separate prayer for relief in terms of the declaration of rights under the contract, and there's no need to do that. And there are also a host of cases that say that whether or not a particular item of relief is in the prayer, a court has authority to give whatever relief is appropriate. We put the issue of contracting. Well, that's true. I mean, I guess I agree with Judge Dyke. It's not a matter of whether the district court had the authority to do that. Well, let's concede that she could have done it if she wanted to. That doesn't obviate what the requirement is in terms of pleading in order to establish jurisdiction. Yes, and as I said, Your Honor, I think it's true. I mean, how would, based on what you pled, you were seeking a determination that the patent is invalid. That's correct. That doesn't necessarily have anything to do with the contract rights. But it's then that the defendant, we'd have no way of knowing that the defendant was going to argue that the contract would require the payment of royalties that were in spite of the invalidation of the patent. That came as a big surprise to you? Well, there's no way to know. There was no discussion of this. Why didn't you ask for a declaration about the contract rights? You could have moved to amend. Why didn't you move to amend the complaint? Again, Your Honor, because under the controlling Federal Circuit authority, it was not required. I think the law is quite clear. Is there some other, I mean, I'm just trying to relieve my curiosity. Is there some other reason, aside from the fact that you didn't feel like you needed to, that is why you declined to file a motion to amend the complaint with a second count for a declaration of what your obligations were under the contract if you successfully proved the patent to be invalid? No, I would stand on that, that there was no reason to. The case is made clear that the court. But it would have made it a lot more complicated, right? I mean, there are other parties to the contract that weren't a party to this proceeding. If you were to allege that the invalidity therefore requires an abrogation of whatever obligation you have under the contract, there are other parties involved. Those parties are in England. I mean, this is what the district court said in exercising her discretion. You've got other parties. You've got English law that would have to be applied. It's not just an easy result. Yes, and this is, again, the same thing that happened in the MedImmune versus Genentech case that the Supreme Court decided and in the power case. Well, in MedImmune, they also allege, I mean, MedImmune had it all. It dealt with contractual rights, right? It dealt with contractual rights. I mean, that was alleged. That was a piece of what they were alleging here. And we're talking about your failure to allege or ask for a DJ on the contractual rights. As I said, you don't think it would have made things more complicated? No, I think the issue is the same, Your Honor. Would you have had to bring in the English parties, the other parties, to the agreement? No, I don't believe so because you could have a secret declaration as to the contract doesn't include this, yada-da, and that would be done without the joinder of the other parties. Well, to be clear, the contract between AbbVie and MedImmune does not involve any other parties. It solely involved AbbVie and MedImmune. But wait, on the patent and validity question, the British entity is interested because it's the owner of the patent. And if we reject your argument that MedImmune had all substantial rights and the patent, then the British entity was a necessary party, right? If you reject that argument, yes, although, as we argue in the brief, even if that's the case under the indispensability test, there would be no requirement to join MRC because they have already conveyed the entire right to defend validity challenge and to bring infringement actions to MedImmune. But that's not the same right as to enforce the contractual obligation to pay the royalty amounts at a certain date. Isn't that different than the obligation of the right to defend the validity of a patent? I want to be clear on this, Your Honor. There are no other parties to that contract besides the ones in this court. MedImmune and AbbVie are the parties that have signed that contract. I think Your Honor is thinking of the grant to MedImmune from MRC of license rights, which would determine what rights they have, MedImmune does, to bring suit or to defend the patent with respect to validity claim. But with respect to any contract claim, the parties are here. Before the court, they were here. Well, the district court judge says that A7, the property rights of MRC, an arm of the British government, an entity outside of this case, would also be implicated. And when she's talking about implicated the contract rights, is that wrong? She's talking, I'm quite sure, about the license agreement between MRC and MedImmune or CAT. They are not a party to the license between CAT and AbbVie. And when she says their rights are implicated, she gave no rationale for that, no explanation for why they would be, no reasoning as to, since they've already contracted to give all rights to enforce the patent and to defend against challenges to MedImmune and made it even outside the field of use. Well, if you were right about that, perhaps. But it seems to me that's highly questionable, whether there was a transfer of all substantial rights or that MedImmune had the obligation and sole right to defend. I read that part of the agreement. I don't necessarily see that you're right about that. And if you're not right about that, then the British entity wouldn't be a necessary party here. And you didn't even try to join them, right? No, because we made the judgment, A, that they were not susceptible to suit, and B, more importantly, that it was not required. But they're susceptible to suit unless they assert their sovereign unity, right? Yeah. But, you know, we made that judgment that they were not required, they were not necessary, and they're not indispensable for the reasons we set out. And I'd also say, Your Honor, that MedImmune brought the motion to dismiss for failure to join a party. So it was really their burden to show that MRC was necessary or indispensable. We asserted that they had all rights. And so it then became their burden, and they didn't even put the agreement before the district court, and the district court made no finding whatsoever as to how MRC would be prejudiced, why MRC would be prejudiced, why they hadn't already given up any ability to make that argument by transferring all the rights. And I think the agreement is clear, it clearly states that they have the right to, that MedImmune has the right to bring all infringement actions, whether or not in the field of use that they are practicing. So any infringement action, they get to keep all the proceeds. MRC has no right to participate. Okay, so let me just play this out, how from your side this was going to play out. You were going to get a determination by the district court exclusively on the validity question, and let's assume it went your way and the judge concluded that the patent is invalid. You would then refuse to pay whatever amounts come due for that last six months period. Then presumably, if they have a difference with you in terms of what you're obligated to do under the contract, whether expiration is equivalent to validity or whatever, you would envision that they would then go in and sue you in the English courts for a violation of the contract? Is that the way? I'm just trying to hypothesize how this is going to play out. So not quite, Your Honor. I think the way it would work is that if they raise in the district court, which they already have, the issue that the agreement requires payment regardless of the validity of the patent, that under the Powertec case, regardless of any specific request for relief, becomes an issue, a merits issue, not a jurisdictional issue, that the district court But Powertec didn't address the question of whether a district court in the exercise of its discretion can decline to entertain a declaratory judgment action which isn't going to resolve the whole controversy. And in de forma, which apparently you're not familiar with, we said that where there are two issues that would need to be resolved for the declaratory judgment plaintiff to prevail, that if you bring a suit to resolve only one of them, it suggests that you need to show that the other issue is being adjudicated in another case, which is not the situation here. So perhaps you could avoid the problem of not bringing the contract issue into this case by simultaneously maintaining a suit in the British courts for a declaration of whether you'd have to pay if the patent were invalid, but you haven't done that either. So you're asking to do this piecemeal. And there are plenty of cases suggesting that declaratory judgments are not appropriate where it would result in piecemeal litigation. Again, Your Honor, my response would be, first of all, I don't think that bringing an action in the British courts that tell the courts, you know, just in case the U.S. court decides this patent invalid, but haven't done that, haven't done so, you should decide that we don't have an obligation. I don't think that that kind of theoretical advisory action would really have been productive at all. That's right. Yes. And therefore, you should have brought it here. And your only answer to us about why you didn't bring it as part of your D.J. is that, well, if that was the case, if they felt that way, they could have raised it as a defense. What if they didn't raise it as a defense? So the judge exclusively adjudicates only the validity issue, and we've still got this contractual dispute out there that's not resolved by this litigation, which is exactly what we're not supposed to be doing here in D.J. So first of all, Your Honor, they did raise it as a defense. That was the whole, they raised that in the lower court and they've raised that here. And when that happens, the authority that we cited says that that issue is properly before the district court and can be decided. Now, if they hadn't raised it, I don't know. I don't know what would have happened. If they hadn't raised it, maybe it would have been a compulsory counterclaim, and by not raising it, they've waived it. That's possible, but they did raise it. And so it was properly before the district court. The district court clearly had the authority to decide it, and it's properly before the court now. What was their defense? What was the defense? They argued that under the contract, we'd have to pay royalties regardless of the patent's validity. As a defense? Where do I find that? That was in their motion to dismiss. It was in their motion to dismiss. And it's in this brief as well. They said there's a motion to dismiss because this wouldn't resolve the whole controversy, presumably, right? They argued, they very clearly argued, in the motion to dismiss and on this appeal, that under the proper interpretation of the contract, that we would have to pay the royalty. And that's their argument as to why there's no D.J. jurisdiction, because it doesn't resolve the entire controversy. That doesn't mean they brought that issue into the case for square for the district court to adjudicate. They were using that, right? I mean, that's what you're telling me. I'm not exactly sure what. Okay, so they brought it in for purposes of establishing that there was no jurisdiction, not for purposes of bringing it into an issue that needs to be resolved in this case. Well, no. We alleged in the complaint that our obligation to pay royalties would not, if the patent was invalidated, would not continue after January. And they didn't answer the complaint, obviously. They filed a motion to dismiss. Did they ask the district court to determine that there was no obligation under the contract, even if the patent was invalid? No, they asserted it. They moved to dismiss the case. No, they didn't ask the district court to resolve the question. No, they moved to dismiss it, Your Honor. They didn't ask the court to resolve it. They moved to dismiss, which is exactly what happened in Powertech. And Your Honor said the difference between this case and Powertech was the fact that here the court used its discretion to decline as opposed to that case where it was a question of whether there was jurisdiction. And my response to that is that the Capo versus Diotech. On my recollection, and I have some familiarity with Powertech since I wrote the opinion, is that this issue that we're talking about now did not come up there, and also that in Powertech the contract said you don't have to pay if the patent's invalid or expires. Now, I understand, Your Honor, wrote the opinion, and I'm pretty confident of this, that this exact argument was raised by the defendant in Powertech. They said the contract doesn't require us to pay royalties, requires payment of royalties even if the patent is invalidated, and therefore there's no jurisdiction. And the court rejected that argument, said that is a merits argument, and the district court... But we didn't address the question of whether the failure to ask for a declaratory judgment on that issue made it inappropriate to render a declaratory judgment on the invalidity. I think if the court looks at the opinion, we'll see that the declaratory relief sought in that case was solely limited to a declaration, the prayer, to a declaration of non-infringement and invalidity. But where did we address the issue that we're talking about this morning in Powertech? I think the issue was addressed in the court's finding, holding, that the district court had the ability to decide that issue that was raised by the defendant, that the district court had that authority to decide that as part of the underlying merits of the dispute, despite the absence of a specific prayer for relief by the plaintiff asking for a declaration of rights. I believe the case is thoroughly on point with respect to that issue. And that's in part what we relied upon in fashioning our complaint in this case. Okay, we're way beyond our time. Good morning, Your Honors. David Burrell from MedImmune. Obviously, far be it from me to tell you what Powertech says, having not written the opinion or participated in it. It's not as fresh in my mind. Okay, here, let me read from page 1308 of the Powertech decision. It says, like the petitioner in MedImmune, PTI, Powertech, is seeking to define its rights and obligations under its contracts with Tessera. So that the court assumed in Powertech that the DJ plaintiff was asking for a declaration of its rights and obligations under the contract. That was explicitly done in the MedImmune case, as Judge Prost observed. Count one of the Genentech MedImmune complaint, which Justice Scalia looked at. Let's stick with Powertech. I guess I'm trying to find where... Sure, sorry, it's at 1308 in the right-hand column, about three-quarters of the way down. Okay, I've got a different version. I'm sorry. Under which section is it? Sure, it's labeled B, and then there's a three, and then it's right after the citation of the Altvater case from the Supreme Court. Okay. And there follows the sentence that I read into the record, which reflects the understanding of the court in that case, and the presumption of the court in that case, that the DJ plaintiff was seeking to define its rights and obligations under the contract. That's plainly not done here, as the court has observed, and even a perfunctory review of the record reflects at A63. There's no count for a declaration of contractual rights. There's not even a count for a revocation of the patent or cancellation of the patent. There's no prayer for relief. Okay, let me move you off to a different line, which is there's some things that trouble me about what's going down in this case. One of them is that your principal argument is that they're not practicing the patent. Let's assume we reject that as being a basis. It seems to me, and what do we do with the fact that the district court agreed with that? If we disagree with her, that that should be a factor or a determinative factor here. So let me just leave that aside and assume that you disagree with us for that purpose. You still have the piecemeal litigation problem that is identified throughout the Supreme Court's jurisprudence on the DJ Act, starting with the Kauffman v. Brees case and the Calderon case and even the Medimune-Genentech case. But wouldn't, would that be considered under an abuse of discretion? Under her discretion that she had discretion given the piecemeal nature of the litigation to say no? Yes. Okay, the problem I have is if you look at A7, which there's two paragraphs, unless I'm missing something.  It seems to me this is the sum and substance of her analysis on dismissal, on exercising her discretion. Is it a she? I don't remember. And you've got these two paragraphs, and except for one sentence that does talk about piecemeal, the requested invalidation of the patent would not end the dispute between the parties. It seems like, almost like she thought she didn't have the authority to apply English law. I don't think. I mean, look at what she said here and tell me what you're reading is what her exercise of discretion consisted of. I'd be happy to. I don't read anywhere in the district court's opinion the view that it is unable or not allowed to interpret a contract under U.K. law. It clearly is permitted to do that, but the question is whether it is required to do that in order to exercise its discretion, whether to entertain D.J. jurisdiction. The Supreme Court has been clear all along that it's not obligatory, and the courts should be circumspect in asserting D.J. jurisdiction. Wait a moment. So you're suggesting that even if they had actually sought a declaratory judgment on both the invalidity issue and the contract issue that there would have been no declaratory judgment jurisdiction? Yes, I think that for two reasons. First, you still have the problem of piecemeal litigation. Even if they had asked for a declaration of contractual rights, there's no basis to believe that that declaration of contractual rights would have been enforceable in the United Kingdom, which governs the analysis of this contract. So we still would have brought another lawsuit in the United Kingdom. They don't follow collateral estoppel principles based on adjudication in a foreign court? The Crane case that we cite at page 37 of our brief out of the Second Circuit from 2009 makes this clear, where the D.J. plaintiff sought a declaration of its rights under foreign law, and citing the restatement of foreign law, section 481, the Second Circuit observes that unlike a typical U.S. case where we have full faith and credit, a declaration of rights under foreign law is not entitled necessarily to enforcement in a foreign court, especially where it involves a subject of foreign law, here U.K. contractual law. So there's no basis, and AbbVie has provided no basis whatsoever to suggest that even if it had sought and obtained that declaration from a U.S. court about what the U.K. contract means, that that would have been relevant or enforceable where this contract is governed in the United Kingdom. So the idea of piecemeal litigation would not have been extinguished. It seems to me to be not helpful to you, but helpful to them. In other words, they're saying they could say, well, of course we didn't seek a declaration here because the British courts wouldn't give it full faith and credit. We had to wait to file the contract issue in the British courts, and so it's appropriate for us not to have sought that here. As Your Honor observed, first of all, they wouldn't have to wait in order to file that action in the United Kingdom. There's again no basis to say that they couldn't have filed an action in the United Kingdom years ago declaring their rights as to when their obligation to pay royalties is extinguished. But I think more fundamentally, the point under all of the Supreme Court cases is whether there is piecemeal litigation. Wait a minute. Piecemeal litigation is disfavored, but not having any avenue in which to pursue your claims is also a principle that's disfavored. So you keep saying they could have gone to the British court. How could they have gone to the British court? The British court doesn't have the authority or the jurisdiction to determine whether or not a patent is valid or invalid. So going to the British court would have been useless. The court would say, well, what do you mean? The patent hasn't expired. And they couldn't make arguments, well, the patent is invalid anyway in the British court. So they couldn't bring this issue in the British court, right? I disagree. I think they could have sought a declaration in the British court about what their contractual rights and obligations are. Hypothetically, it's an advisory opinion. We've got a valid patent here. What would the question be? The question would be, if we get a judgment of invalidity, are our rights under this contract? I really think they're going to go to court and say, hypothetically, if we manage to get into a district court in the United States, get that district court to agree we have jurisdiction, prevail before the district court that the patent is invalid. If all of that happens, British court, you tell me what the contract means. Do you think that's a live case in controversy? Well, there is no live case or controversy requirement in the United Kingdom in the first instance. The second answer is they didn't even try. So we don't really know the answer to that question. This is a contractual dispute governed by U.K. law. Well, let's assume that we think that that's more likely than not the outcome, i.e., that the British court would not have entertained that dispute. Just humor me. You realize it's a possibility. So let's conclude that it's at least likely. So where are they left in terms of where their rights exist? Where is the proper venue? If they can't bring it in the British court, because the British court is going to say, well, we don't even know if the patent is invalid or not invalid, that hasn't been adjudicated yet, we don't have anything before us. What do they do then? Well, one thing they could do is do what Judge Dyke suggested a few minutes ago, which is file the two cases concurrently. That they haven't done either. File a case in Britain and a case here concurrently. Sure. But how does that defeat? You're saying this is all driven by piecemeal litigation, and you're saying invite piecemeal litigation. How does that obviate the problem of piecemeal litigation? The district court is then going to say the same thing she did here, which is this is piecemeal. I'm not going to do it. Well, they do have a pending dispute in that case, albeit before a different court. And the district court could exercise its jurisdiction to reject it. The district court, you're right, could reject it as a matter of discretion. And if she does, then they've got no place to go to seek relief under this contract. Because if we assume that the British court is not going to entertain a hypothetical argument where the patent has not been declared invalid. Well, again, I don't think there's any basis in the record to conclude that. The only case they cite for that proposition is the Thomas Brown case. And if you look at that case, it's at A830 of the appendix. The court in the United Kingdom declines to provide a declaration because the parties have no dispute. And the parties are in agreement. So it says, I'm not going to provide a declaration since there's no dispute. So if they go into Great Britain next week and file a suit for a declaration that if, hypothetically, the patent were to be declared invalid, they would or would not have an obligation under the contract to pay the last six months, you would not argue in that dispute if there's no jurisdiction or that that's not properly before the court. Again, they haven't filed that suit. I don't know what it would look like. But that would be up to the UK court to decide whether it would entertain that dispute. And if it would, we would, of course, argue our contractual interpretation before the proper court, before the UK court, about what this contract means and whether a declaration of invalidity would end up extinguishing their obligation to pay royalties or not and what the timing of that would be. But all of those things- Would you oppose if they had brought or did bring an action in the UK courts for a declaration as to what the contract means? Did you say that that was not appropriate for the British courts to pass on that? If they had done that in a timely way, I don't see that we would have disputed the ability of the UK court to provide an interpretation of a contract under UK law. That's the proper venue for this contract to be interpreted. And the idea that a district court here in the United States can interpret a UK contract does not mean that it must interpret a UK contract. They cite not a shred of case law in support of that authority. And we can't forget the second basis for the district court's discretionary decision not to entertain jurisdiction in this case. And that is the rights of a party that was not before the court. The district court observed that MRC was not a party to this case. They were never asked to join this case. But your friend says they're not a party to this agreement. Is that correct or incorrect? Right. It's not a matter of them being party to the agreement between AbbVie and MediMun. It's a matter of them being a party to the case in which a declaration of invalidity of their patent is being asserted and potentially adjudicated. And under this court's case law, that simply can't be done. They haven't transferred all substantial rights by way of a field-of-use license to the exclusive licensee. And under the Supreme Court's case law, the district court didn't really do any of that analysis, right? Correct. Whether all substantial rights were transferred and, in addition, never did any Rule 19 analysis. So this observation by the judge below that MRC and other patent owners were not joined to this complaint, it feels incomplete because neither a Rule 19 or a substantial transfer of rights inquiry was ever made by the judge when she made the observation that MRC didn't happen to be there. And that was the precise argument advanced by AbbVie in order to say that there was a legal error below, that there was no Rule 19 analysis conducted by the district court. The Supreme Court has said otherwise. The Supreme Court in the Abbott case indicates that a Rule 19 analysis is not required, it's not necessary, in order to dismiss discretionarily for lack of subject matter jurisdiction in the declaratory judgment context. And this court in BP Chemicals said the same thing. A party need not be necessary and indispensable in order for a district court not to invoke DJ jurisdiction. They just have to be interested. They have to be desirable. And on this record, there can be no doubt. I'm not sure about that. I've read Abbott. I've read these guys. I'm not sure that's right. Well, I don't read AbbVie in their reply brief even to contest that proposition. I think they basically retreat and argue that even if the district court wasn't required to conduct a Rule 19 analysis, there still must be some concern about the missing party. And I think that standard is easily satisfied given that the MRC party that's missing has rights to the patent that remain. It can practice the patent. It has full rights to single-chain variable regions that are within the scope of the claims of this patent and is a foreign sovereign entitled to deference from this court. So the standard of concerns easily is met. The idea of whether Rule 19 formal analysis needs to be undertaken, you can read Abbott. And if you disagree with the reading of Abbott, obviously that's the court's prerogative. One casual sentence in Abbott. But followed, again, in BP where no Rule 19 analysis was undertaken and the discretionary dismissal was appropriate. That seems to be the law as understood by this court. But even were a Rule 19 analysis somehow required, this court has articulated repeatedly what is called a clear rule, that a field of use licensee does not have all substantial rights to the patent. And it's no answer. Yeah, but we don't have a clear rule that if the British company is a necessary party, that if it can't be joined, that it's indispensable. Well, that is similar to what happens in the A123 case. And also in Alford Mann, this court held that a patent owner that has not conveyed all substantial rights is necessarily both a necessary and indispensable party. So that there's no separate analysis required with respect to the indispensability of MRC. Rather, they haven't conveyed all rights. They've simply conveyed a field of use license. And I think more important, AbbVie's response to this is to say, well, they've just conveyed a field of use license, but they've given all the litigation rights to Metamine. So you can ignore what you call the clear rule in the Alks South case about a field of use licensee not having all substantial rights. In the A123 case, this court held that a field of use licensee in almost identical circumstances to the case at Barr did not have all substantial rights without even knowing what litigation rights it had. Because it was irrelevant. The contract was requested, potentially, in discovery. And the district court and federal circuit had no interest in the contract. Because a field of use licensee does not have all rights and must be joined with the patent owner, in this case, MRC. And they didn't even try, in this case, to join MRC. We don't know whether they would have waived sovereign immunity. We don't know whether they would have waived personal jurisdiction. AbbVie never even tried. Unless the court has further questions, I'll rest. Thank you. Very briefly, Ron, there's a lot of talk about abuse of discretion. And I want to address that briefly. This court made clear in the Capo v. Diaptics case that there are substantial limits on the discretion that can be exercised by the district court in declining to exercise declaratory relief. There must be a sound basis. It must be well-founded, explained, and reasoned. And it must be consistent with the purposes of the Declaratory Relief Act. Now, here, the court's basis for declining were not well-founded. The court talked about the rights of a party being implicated with no analysis of what those rights were and why, in any way, they'd be prejudiced. And the fact is they would not be prejudiced. Because despite the fact that they reserved some rights within a field of use, those rights did not include the right to enforce the patent or to defend against validity. Those rights were given completely to MedImmune. And there's not been a single case cited by MedImmune here in which a licensee was given the sole right to enforce and defend the patent and was found to have to still join the licensor. And none of the field of use cases that they cite are relevant. The other point I want to make, and one of the other reasons that discretion was abused here, is what Judge Prost, you alluded to, which is this is a case where the exercise of discretion by the district court effectively denies my client of any remedy. There is no other court that can decide the validity of this patent. And so by exercising this discretion, we've effectively been denied of a remedy. And I think the Koppel v. Ioptics and other cases say that's a very important factor in deciding whether there is an abuse of discretion by the district court. The last point I want to make, Your Honor, is again in Powertech, and I want to belabor this, but I do think that the opinion makes expressly clear that the only declaration that was sought there was a declaration that the products did not infringe in count one and that the patent was invalid in count two. The court went on to conclude that the merits of the contract dispute were in front of the court and they were a merits issue that the district court could decide, which did not impact the court's jurisdiction. So I understand, Your Honor, saying that it's true that here there was an exercise of discretion, which was not specifically addressed, but I think all the factors that I've talked about in terms of how a district court has to exercise its discretion. Was there a motion to dismiss in that case due to piecemeal litigation? There was a motion to dismiss for lack of jurisdiction. But not on account of some allegation that the complaint was incomplete and asking for entire relief of a larger dispute between the parties. My understanding is the argument was made that the contract required the payment of royalties regardless of validity, and that argument was addressed by the court. So specifically, was there a specific claim along the lines that Your Honor is asking about? That's not revealed, but I think the issue was before the court in deciding. Thank you. The same on both sides. The case is submitted. That concludes our proceedings this morning.